UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Joshua A. J., | No. 22-cv-3012 (DSD/DLM) |
|       Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Kilolo Kijakazi,<br>  Acting Commissioner of Social Security, | |
|       Defendant. | |

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Joshua A. J. seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for benefits. This matter is before the Court on the parties' cross-motions for summary judgment. (Docs. 12–13 (Plaintiff's motion and supporting memorandum), 18–19 (Defendant's motion and supporting memorandum).) The case has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons below, the Court recommends that Plaintiff's motion be granted, Defendant's motion be denied, and this matter be remanded to the Commissioner for further administrative proceedings consistent with this Court's recommendation.

## BACKGROUND

On April 13, 2020, Plaintiff applied for Supplemental Security Income ("SSI"), alleging he had been disabled since October 1, 2018. (Tr.[1] at 261–76.) The Social Security Administration ("SSA") denied his claim initially (Tr. at 124), and upon reconsideration (Tr. at 148). Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on the matter on November 12, 2021. (Tr. at 33–92.) Counsel represented Plaintiff at the hearing, and Plaintiff testified on his own behalf. (Tr. at 41–57.)

On January 13, 2022, the Commissioner sent a notice of an unfavorable decision to Plaintiff. (Tr. at 7–29.) The ALJ recognized that Plaintiff suffered from several severe impairments, including degenerative disc disease of the lumbar spine and bilateral Dupuytren's contracture (involuntary bending in of the fingers towards the palm of the hand). (Tr. at 12.) The ALJ also acknowledged that Plaintiff had several non-severe impairments, including a body mass index ("BMI") in the low 30s consistent with obesity, hypertension, gunshot wounds to his right thoracic back and left leg and thigh, depressive disorder, generalized anxiety disorder, and substance abuse disorder. (Tr. at 12–13.) Yet despite Plaintiff's mental and physical impairments, the ALJ found that he is not disabled. (Tr. at 25.) In so doing, the ALJ determined that Plaintiff retains the residual functional

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record in five parts on March 2, 2023. (Docs. 11–11-4.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited document as though all five parts were combined into one document, rather than docket page number or exhibit number.

capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) with no mental health limitations, and only two minor adjustments reflecting Plaintiff's physical impairments, limiting him to occasionally climbing ladders, ropes, and scaffolds, and frequently performing handling and fingering with the bilateral hands. (Tr. at 17.) The ALJ then credited the testimony of the vocational expert at the hearing that Plaintiff could perform jobs in the national economy, including a cashier II (Dictionary of Occupational Titles ("DOT") No. 211.462-010), photocopy machine operator (DOT No. 207.685-014), and mailroom clerk (DOT No. 209.687-026). (Tr. at 24, 85–86.) Plaintiff appealed the ALJ's decision, but the Appeals Council denied his request for rehearing, making the ALJ's decision the final decision of the Commissioner. (Tr. at 1–6.)

Plaintiff then timely filed this lawsuit seeking judicial review of the Commissioner's decision. Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. § 416.920(a)(4)[2] for evaluating SSI claims. Rather, he argues the ALJ incorrectly found Plaintiff's mental health impairments non-severe at step two of that process. According to Plaintiff, the ALJ discounted much of his mental health evidence

---

[2] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. *Id.* § 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under Appendix 1 to Subpart P of Part 404. *Id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and decide (at step four) whether the claimant can still do their past work given their limitations. *Id.* § 416.920(a)(4)(iv). Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v).

3

because the ALJ determined it was related to Plaintiff's substance abuse history. Plaintiff argues that the ALJ should have considered all Plaintiff's symptoms—including symptoms related to his substance abuse disorder—when reaching a disability determination during the five-step sequential process.

Plaintiff's argument hinges on the SSA's evaluation of drug addiction and/or alcoholism ("DAA") under 20 C.F.R. § 416.935, a regulation helpfully explained in *Whittle v. Berryhill*:

> In 1996, Congress enacted what has become known as the Contract with America Act. As part of that legislation, the Social Security Act was amended to deny disability benefits to a claimant if alcoholism or drug addiction is a contributing factor which is "material" to the determination that the claimant is disabled. *See* 42 U.S.C. § 423(d)(2)(C). To determine if alcoholism or drug addiction is "material" to disability, the SSA inquires whether the claimant would remain disabled if the claimant stopped using drugs or alcohol. *See* 20 C.F.R. §§ 416.935(b); 404.1535(b). The focus of the inquiry is on the impairments which would remain assuming the claimant ceased the substance abuse, and whether the remaining impairments would be disabling in the absence of the claimant's substance abuse. *Rehder v. Apfel*, 205 F.3d 1056, 1060 (8th Cir. 2000).
>
> In addition to the Code of Federal Regulations, the Social Security Administration has implemented a Social Security Ruling ("SSR") to assist in the interpretation of 42 U.S.C. § 423(d)(2)(C) and 20 C.F.R. §§ 416.935(b) & 404.1535(b). *See* SSR 13-2p. This interpretive policy explains how the SSA considers whether DAA is a contributing factor which is material to claimant's disability. SSR 13-2p § 5 directs that the SSA follow a six-step procedure to evaluate whether DAA is material to a claimant's disability. The six steps are as follows:
>
> > Step one: does the claimant have DAA?: If no, then no DAA materiality determination is necessary. If yes, go to Step two.
> >
> > Step two: Is the claimant disabled including all impairments, including DAA?: If no, do not determine DAA materiality and deny the claim. If yes, go to step three.

> <u>Step three</u>: Is DAA the only impairment? If yes, DAA is material and deny the claim. If no, go to step four.
>
> <u>Step four</u>: Is the other impairment(s) disabling by itself while the claimant is still dependent upon or using drugs/alcohol? If no, DAA is material to disability and deny the claim. If yes, go to step five.
>
> <u>Step five</u>: Does DAA cause or affect the claimant's medically determinable impairment(s)? If no, DAA is not material and allow the claim. If yes, but the other impairment(s) is irreversible or could not improve to the point of non-disability, DAA is not material and allow the claim. If yes, and DAA could be material, go to step six.
>
> <u>Step six</u>: Would the other impairment(s) improve to the point of non-disability in the absence of DAA? If yes, DAA is material and deny the claim. If no, DAA is not material and allow the claim.
>
> *See* SSR 13-2p, § 5.

No. 4:18-cv-04095 (VLD), 2019 WL 2124247, at *28–29 (D.S.D. May 15, 2019).

Here, Plaintiff claims that the ALJ did not follow the traditional, sequential five-step evaluative process and then, if indicated, perform the above DAA-materiality analysis. *Accord Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003) (clarifying that the five-step evaluative process "concerns strictly symptoms, not causes," and must precede any determination of whether DAA has contributed to those symptoms). Plaintiff contends this was a legal error that resulted in an ultimate determination lacking substantial support in the record. Plaintiff's second argument for reversal follows from the first: that the ALJ's resulting residual functional capacity ("RFC") determination likewise lacks substantial support in the record.

5

## ANALYSIS

This Court reviews an ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision is infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1089 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to decide whether it contains sufficient evidence to support (or detract from, as the case may be) the ALJ's conclusion. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). If substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089. But if an ALJ uses the wrong legal standard or incorrectly applies the law, those may be reversible legal errors. *Joel M. B. v. Kijakazi*, No. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *2 (D. Minn. June 1, 2022) (citing *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)); *Michael B. v. Kijakazi*, No. 21-cv-1043 (NEB/LIB), 2022 WL 4463901, at *1 (D. Minn. Sept. 26, 2022).

I.   **The ALJ's initial determination of disability improperly segregated evidence of Plaintiff's substance abuse disorder symptoms—a legal error contrary to 20 C.F.R. § 416.935.**

Plaintiff's first argument is that the ALJ improperly concluded that Plaintiff's mental health impairments—including substance abuse disorder, anxiety, depression, and withdrawal symptoms such as frequent panic attacks—were non-severe. Plaintiff testified during the hearing before the ALJ about how these symptoms impact his mental functioning, including severe anxiety causing frequent panic attacks, heart palpitations, and a feeling of mortal dread. (Tr. at 43, 55–56, 63–78.)[3] Plaintiff's testimony resulted in a hypothetical question to the vocational expert: would there still be jobs in the national economy for a person who was off-task about 15–20% of the workday because of panic attacks. (Tr. at 87–88.) The vocational expert responded that "there would be no job in the competitive national economy" for such a person. (Tr. at 88.)

Plaintiff argues that instead of considering this and other record evidence regardless of its relationship to his substance abuse disorder, the ALJ separated out and discounted symptom evidence related to substance use/abuse at step two, an improper procedure under 20 C.F.R. § 416.935 and SSR 13-2p (interpreting § 416.935). This resulted, according to

---

[3] *See* SSR 13-2p, 2013 WL 621536, at *6 n.15:

> In some cases, people use drugs or alcohol to lessen the symptoms of their other impairment(s). Adjudicators should be alert to any evidence in the case record that suggests that a claimant's symptoms may worsen in the absence of drugs or alcohol at this or any other step in this section. We do not require adjudicators to seek evidence of this possibility, but adjudicators should follow up when there is an indication in the case record that the claimant's symptoms worsen in the absence of substance use.

7

Plaintiff, in two distinct errors: (1) a determination that lacks support from substantial evidence in the record because the ALJ discounted record evidence of Plaintiff's disabling symptoms if they were related to substance abuse; and (2) a reversible legal error because the ALJ failed to follow a mandatory regulation (§ 416.935). The Commissioner responds that Plaintiff's arguments are based on his own subjective claims, rather than any medical provider opinion, and reflect a mistaken understanding of how substance abuse-related symptoms factor into an ALJ's evaluative process.

At step two of the five-step sequential process, an ALJ must determine whether a plaintiff has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 416.909], or a combination of impairments that is severe and meets the duration requirement[.]" 20 C.F.R. § 416.920(a)(4)(ii). To be severe, an impairment must "significantly limit[ ] [a plaintiff's] physical or mental ability to do basic work activities[.]" *Id.* § 416.920(c). Step two should not include any separation or discounting of impairments because they are caused by DAA. SSR 13-2p, 2013 WL 621536, at *4 (S.S.A. Feb. 20, 2013) ("When do we make a DAA materiality determination? . . . Under the Act and our regulations, we make a DAA materiality determination only when: . . . We find that the claimant is disabled *considering all impairments, including the DAA*.") (emphasis added, footnote omitted).

Here, while the ALJ determined there were some severe physical impairments present, he found Plaintiff's mental impairments non-severe. (Tr. at 13.) The ALJ began by acknowledging that Plaintiff has been diagnosed with depressive disorder, generalized anxiety disorder, and substance abuse disorder. (*Id.*) As to Plaintiff's substance abuse

8

disorder, the ALJ described Plaintiff's longstanding history of mental illness and substance abuse, which the record shows involved psychiatric hospitalization to detoxify from various substances and visits to the emergency department with withdrawal symptoms. (*Id.*) The ALJ also observed that Plaintiff had weaned himself from suboxone only to begin taking clonazepam illegally; had suffered gunshot wounds in June 2020 to his back and leg and received a temporary prescription for oxycodone; had been hospitalized for severe psychosis because of his polysubstance dependence, including symptoms of benzodiazepine withdrawal; demonstrated consistent dependence on diazepam and benzodiazepine; and was in remission for opioid dependence. (*Id.*) The ALJ found that "[o]utside of the substance use/abuse, the claimant's mental health treatment during the relevant timeframe has been routine, conservative, and outpatient-only consisting of a psychotropic medication regimen, along with some therapy[.]" (*Id.* (citations omitted).) The ALJ thus concluded at step two that "there is no indication that the claimant's substance use has resulted in any persistent or ongoing "marked" or "extreme" functional limitations. As such, Drug and/or Alcohol Abuse (DAA) is immaterial to determination of disability." (Tr. at 14.)

Reviewing the ALJ's decision, the Court agrees that the ALJ legally erred in reaching his determination because the ALJ separated out symptoms of Plaintiff's substance abuse disorder from his other symptoms of mental health impairment during his step two analysis. The ALJ expressly makes statements such as "*Outside of the substance use/abuse*, the claimant's mental health treatment during the relevant timeframe has been routine, conservative, and outpatient-only consisting of a psychotropic medication

9

regimen, along with some therapy[.]" (Tr. at 13 (emphasis added, citations omitted).) The Commissioner argues that the ALJ reasonably separated out and discounted Plaintiff's subjective complaints of substance abuse when finding them non-severe because Plaintiff's "argument are based almost exclusively on his own subjective claims" rather than on opinions from treating or examining physicians. (Doc. 19 at 1, 14 (citing 20 C.F.R. § 416.929(a), 18 (citing Tr. at 16).) The Court finds the Commissioner's argument redirecting the focus to Plaintiff's credibility is beside the point because it would impermissibly allow the SSA to alter the analysis set forth by regulation—regulations the SSA *must* follow. Moreover, the Court finds Defendant's argument inaccurate where the record contains many objective medical evaluations that support Plaintiff's subjective testimony. (*See, e.g.*, Tr. at 1690 ("The intense panic and anxiety has impacted his life significantly. His wife and children are currently . . . on a family vacation. However[,] he was not able to go with because of an intense fear there was not a hospital readily available should he get these episodes [.]"), 895 ("Anxiety/SAD/Panic Attacks – Topiramate, Gabapentin, and Buspirone were ineffective. Previously discussed with patient that Clonazepam is not a good first line treatment for someone with a history of substance use disorder and who[] is actively using illicit [benzodiazepines]. Anxiety will likely be increased for sometime [sic] due to his current situation."), 996 ("Patient reported that he stopped using benzodiazepines[.] He passed out and experienced hallucinations and he was taken to the ER where he was transferred to Riverside U of M hospital. They determined he had delirium tremens from benzo withdrawal and he was transferred to St. Joe's ICU for monitoring."), 1106 ("He has been in twice to get an MRI done but has panic attacks

before getting it done and their medication does not help him calm down enough to do them.").)

"Under 20 C.F.R. § 416.935, the ALJ must first determine whether the claimant is disabled without segregating out any effects that might be due to substance use disorders." *Kennedy v. Colvin*, No. 12-cv-2917 (PJS/FLN), 2014 WL 988461, at *15 (D. Minn. Feb. 7, 2014) (citing *Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003)), *R. and R. adopted*, 2014 WL 988462 (D. Minn. Mar. 13, 2014). "The ALJ may not first discount Plaintiff's subjective complaints because they are attributable to substance abuse, and then determine whether Plaintiff is disabled." *Id.* at *15. Here, because the ALJ separated out Plaintiff's DAA-related impairments, the ALJ legally erred because "[t]he inquiry here concerns strictly symptoms, not causes[.]" *Brueggemann*, 348 F.3d at 694.

Nor is the Court persuaded that the ALJ's boilerplate summation statement at the end of his step two analysis—that Plaintiff's impairments, "considered singly and in combination," fail to amount to a disability—cure the error identified above. (Tr. at 14.) The ALJ's statement cannot solve in sum what is improper in its parts; namely, that the ALJ did not first determine disability *without segregating out the limiting effects attributable to DAA*, and only then determine the materiality of DAA to that disability finding. This goes against the requirements of 20 C.F.R. § 416.935. *Accord Kennedy*, 2014 WL 988461, at *15 (citing *Brueggemann*, 348 F.3d at 694). Instead, the ALJ should have considered all Plaintiff's symptoms—regardless of their sources—to make a disability determination. *Id.* Only then should the ALJ determine whether DAA was material to that finding. As the *Brueggemann* court instructed twenty years ago, the disability

11

determination focuses first on symptoms, only then turning to causes. 348 F.3d at 694. Thus, the Court finds that the ALJ's analysis contained a legal error.

The remaining question is whether this error is harmless because the ALJ would have reached the same decision regardless. *See Grindley*, 9 F.4th at 629 (quoting *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008)) ("Even if the ALJ made some misstatements in his order, reversal of an ALJ's decision is not required if an error was harmless, meaning '[t]here is no indication that the ALJ would have decided differently' if the error had not occurred."). The Court cannot conclude the error here is harmless.

Because the ALJ separated out and considered the effects of Plaintiff's substance abuse-related symptoms too early in his analysis, rather than after the full five-step evaluative process, the Court will not hazard a guess on how the extra steps of any evaluation under 20 C.F.R. § 416.935 might have proceeded, if at all, had the regulations been followed. The outcome could differ greatly if the ALJ were to find Plaintiff disabled during the five-step evaluative process, then find his DAA immaterial, or that it is too difficult to "determine whether Plaintiff would remain disabled in the absence of substance abuse," in which case, "Plaintiff would be entitled to benefits." *Kennedy*, 2014 WL 988461, at *15 (citing *Kluesner*, 607 F.3d at 537). Materiality of DAA is a difficult inquiry here on which the Court will not speculate. The Court cannot therefore say with certainty that any error here is harmless, and finds remand is warranted.

**II.      The ALJ's RFC determination is not supported by substantial evidence in the record because of errors during earlier steps in the five-part evaluative process.**

Plaintiff's second argument is that Plaintiff's RFC fails to address all his limitations because the ALJ improperly evaluated the severity of Plaintiff's mental impairments at step two, as detailed above in Section I. The Commissioner responds that because the ALJ found no severe mental impairments at step two, he properly concluded that Plaintiff's RFC required no limitations for mental impairments.

Based on the Court's finding above that the ALJ legally erred by segregating out Plaintiff's DAA-related symptoms during his five-step analysis, the Court finds that remand is appropriate for a redetermination of Plaintiff's RFC in light of the issues identified in Section I of this Report and Recommendation. *See, e.g.*, *Mark E. v. Kijakazi*, No. 20-cv-2047 (PAM/JFD), 2021 WL 6066260, at *8–10 (D. Minn. Dec. 7, 2021), *R. and R. adopted sub nom. Mark J. E. v. Kijakazi*, No. 20-cv-2047 (PAM/JFD), 2021 WL 6063631 (D. Minn. Dec. 22, 2021) (finding that errors at step two impacted the RFC and required remand on both questions); *Whittle*, 2019 WL 2124247, at *36 (finding that a proper DAA analysis could impact the limitations to be included in a plaintiff's RFC).

## RECOMMENDATION

Based on the above, as well as on the files, records, and proceedings in this case,

**IT IS RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. 12) be **GRANTED**;

2. Defendant's Motion for Summary Judgment (Doc. 18) be **DENIED**; and

3. The matter be remanded to the SSA pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Recommendation.

DATED:  November 22, 2023     *s/Douglas L. Micko*
                              DOUGLAS L. MICKO
                              United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).

14